*301
 
 ORDER AFFIRMING BANKRUPTCY COURT
 

 COUGHENOUR, District .Judge.
 

 I. Procedural Background
 

 This case concerns the bankruptcy of the Park at Dash Point Apartments (Dash Point). Robert Steinberg, the trustee, appeals Bankruptcy Judge Yolinn’s orders granting CrossLand Mortgage Corp.’s motions to pay over or sequester rents and to relieve it from the automatic stay. After Judge Volinn’s orders, the trustee sought a stay pending appeal. Judge Volinn denied the motion, and it was renewed in this Court. The Court denied the motion for a stay in March.
 

 II. Factual Background
 

 In 1987, CrossLand supplied a construction loan of $10,850,000 for the development of Dash Point, a 280-unit apartment complex. The debtor executed a Deed of Trust and Security Agreement, as well as an Assignment of Rents and Leases; CrossLand recorded these documents in August of 1987.
 

 The debtor defaulted in May of 1989, and CrossLand began a receivership proceeding in Superior Court. On June 19, just hours before the hearing to appoint the receiver, debtor filed for Chapter 11 protection. Thus, a receiver was not appointed. The case was later converted to Chapter 7 bankruptcy.
 

 In August of 1989, CrossLand moved for an order sequestering or paying over the rents collected at Dash Point. The primary legal issue before Judge Volinn was whether CrossLand had a perfected security interest under applicable state law. The Court concluded that CrossLand’s interest was perfected, and ordered the rents be sequestered for CrossLand.
 
 In re Park at Dash Point, L.P.,
 
 121 B.R. 850, 861 (Bankr. W.D.Wash.1990). The Court later ordered that the automatic stay be lifted with respect to the assignments of rents, thus allowing CrossLand to collect them.
 
 In re Park at Dash Point, L.P.,
 
 No. 89-04508 (Bankr.W.D.Wash. January 17, 1991) (orders granting relief from automatic stay and granting motion to pay over or sequester rent).
 

 III.Analysis
 

 The trustee appeals both the order granting CrossLand’s motion to pay over or sequester rent and the order granting Cross-Land’s motion to lift the automatic stay with respect to the assignment of rents. The trustee admits, however, that relief from the stay was appropriate if the Bankruptcy Court’s decision on the issue of the rents was correct.
 

 A. Standard of Review
 

 This Court reviews the Bankruptcy Court’s factual conclusions under the clearly erroneous standard. Bankruptcy Rule 8013. Conclusions of law are reviewed de novo.
 
 In re Johnson,
 
 62 B.R. 24, 28 (9th Cir. BAP 1986);
 
 In re United Home Loans, Inc.,
 
 71 B.R. 885 (W.D.Wash.1987).
 

 B. Perfection of Assignment of Rents
 

 The parties agree that the issue of whether CrossLand has a perfected security interest in the Dash Point rents is a matter to be resolved under state law.
 
 Butner v. United States,
 
 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).
 

 Under Washington law in 1869, a mortgagee could not enforce his or her security interest in real property without a foreclosure sale. Rem.Comp.Stat., § 804, Ses
 
 *302
 
 sion Laws, 1869, p. 130, § 498 (currently-codified, as amended, at Wash.Rev.Code 7.28.230). Under this statute, a creditor was not entitled to rents and profits without first obtaining possession.
 

 In 1969, the law was amended to provide, in part:
 

 Provided,
 
 That nothing in this section shall be construed as any limitation upon the right of the owner of real property to mortgage, pledge or assign the rents and profits thereof, nor as prohibiting the mortgagee, pledgee or assignee of such rents and profits ... from entering into possession of any real property ... for the purpose of collecting the rents and profits thereof ..., nor as any limitation upon the power of a court of equity to appoint a receiver to take charge of such real property and collect such rents and profits thereof....
 

 (2) Until paid, the rents and profits of real property constitute real property for the purposes of mortgages, trust deeds or assignments whether or not said rents and profits have accrued. The provisions of RCW 65.08.070 as now or hereafter amended shall be applicable to such rents and profits....
 

 The first clause of this amendment allows for the creation of security interests in rents, and provides for two methods of enforcement. The second clause provides that such security interests will be governed by the recording statute, Wash.Rev. Code 65.08.070, which specifies that a recorded conveyance of real property perfects the security interest.
 

 Wash.Rev.Code 7.28.230 was again amended in 1989, and now includes a third clause:
 

 (3) The recording of an assignment, mortgage, or pledge of unpaid rents and profits of real property, intended as security, in accordance with RCW 65.08.070, shall immediately perfect the security interest in the assignee, mortgagee, or pledgee and shall not require any further action by the holder of the security interest to be perfected as to any subsequent purchaser, mortgagee, or assignee. Any lien created by such assignment, mortgage, or pledge shall, when recorded, be deemed specific, perfected, and choate.
 

 Under this subsection, it is clear that a creditor in CrossLand’s position has a perfected security interest in the rents and profits. There is no dispute that Cross-Land recorded the Assignment of Rents in 1987. The trustee argues, however, that CrossLand could not have had a perfected interest under the statute as it existed in 1987, and that the 1989 amendment does not apply retroactively.
 

 Washington applies statutes prospectively only, unless there is some legislative indication to the contrary.
 
 Macumber v. Shafer,
 
 96 Wash.2d 568, 570, 637 P.2d 645 (1981). However, there are two exceptions to this rule in Washington. First, a statute that is remedial in nature will be applied retroactively if retroactive application will further the remedial purpose.
 
 Id.
 
 Second, a statute which clarifies legislative intent will be applied retroactively in some cases.
 
 Johnson v. Morris,
 
 87 Wash.2d 922, 925, 557 P.2d 1299 (1976).
 

 CrossLand argues that subsection (3) either clarifies the statute or is remedial in nature, and therefore should be applied retroactively. This reasoning follows from the legislative history and two bankruptcy decisions. First, in
 
 In re Johnson,
 
 62 B.R. 24, 28-29 (9th Cir. BAP 1986), the Ninth Circuit bankruptcy panel held that under Wash.Rev.Code 7.28.230, the security interest in rents, although recorded, was not perfected merely by the debtor’s default. There being no Washington cases interpreting the statute, the court relied on
 
 Investors Syndicate v. Smith,
 
 105 F.2d 611 (9th Cir.1939), in which the Ninth Circuit held that a statute similar to Washington’s required more than default to perfect a security interest in rents.
 
 Investors Syndicate,
 
 105 F.2d at 618. Then, in
 
 In re Association Center Ltd. Partnership,
 
 87 B.R. 142, 145-47 (Bankr.W.D.Wash.1988), the Bankruptcy Court held that under Wash.Rev. Code 7.28.230 (prior to the 1989 amendment), the recording of an assignment of rents did not perfect the interest. The
 
 Association Center
 
 decision may be read as relying on either statutory interpreta
 
 *303
 
 tion, or on the language of the particular assignment at issue in that case.
 

 After the
 
 Association Center
 
 decision, the Washington legislature passed subsection (3). The legislative history unequivocally indicates that the amendment was intended to clarify what the legislature had meant the statute to do originally. The Final Bill Report states, in part:
 

 Federal bankruptcy courts must apply state law in deciding cases involving the validity of a mortgagee’s security interest. In a recent case, a federal bankruptcy court interpreted Washington State property security laws in a way which some believe to be contrary to state legislative intent.
 

 The Washington statute is generally considered to provide that one who holds a mortgage in real property may perfect an assigned security interest in the rents and profits of the mortgaged property simply by recording the mortgage and assignment.
 

 The Bankruptcy Court for the Western District of Washington held in May, 1988 that an assignment of rents taken as security for a loan is an unperfected lien which is not perfected until the lender takes possession of the rents or has a receiver appointed.
 

 It is suggested that an ambiguity in the current statute contributed to the court decision. It is suggested that the statute be amended to clarify legislative intent that a lender obtains a perfected lien and security interest in the unpaid rents once it has recorded a mortgage or assignment of rents.
 

 Final Bill Report, S.B. 5771, 1989 Wash. Laws ch. 73, p. 371, 51st Legislature (1989).
 

 The trustee argues that subsection (3) does not apply retroactively as a clarification. The trustee asserts that, once a court has interpreted a statute, the interpretation is the controlling law, and that later amendments, even if only to clarify the statute, do not apply retroactively.
 
 See, e.g., Marine Power & Equipment Co. v. Human Rights Comm’n Hearing Tribunal,
 
 39 Wash.App. 609, 614, 694 P.2d 697 (1985). There, the court of appeals stated that
 

 legislative enactments which respond to judicial interpretations of a prior statute, and which materially and affirmatively change that prior statute, are not “clarifications” of original legislative intent. Rather such enactments are amendments to the statute itself.
 

 Id.
 
 at 616, 694 P.2d 697.
 

 The trustee's argument ignores the context of the
 
 Marine Power
 
 decision. Clarifying statutes are denied retroactive application when the statute responds to a decision of the state’s highest court, because “once a statute has been construed by the state’s highest court, that construction operates as if it were originally written into the statute.”
 
 Id.
 
 at 613, 694 P.2d 697 (citing
 
 Johnson v. Morris,
 
 87 Wash.2d 922, 927-28, 557 P.2d 1299 (1976)). The purpose for this rule is to avoid separation of powers problems; thus “[t]he Legislature may not, under the guise of clarification, overrule by legislative enactment a prior authoritative Supreme Court opinion construing a statute.”
 
 Id.
 
 39 Wash.App. at 615, 694 P.2d 697. Conversely, where the Washington Supreme Court has not issued a decision interpreting an ambiguous statute, a clarification will apply retroactively. As the state supreme court noted in
 
 Over-ton v. Economic Assistance Authority,
 
 96 Wash.2d 552, 558, 637 P.2d 652 (1981),
 

 where this court has not previously interpreted the statute to mean something different and where the original enactment was ambiguous such to generate dispute as to what the legislature intended, the subsequent amendment shall be effective from the date of the original act, even in the absence of a provision for retroactivity.
 

 Under Washington law, then, the decisions of the bankruptcy courts are of no effect. Because those panels lacked the power to bind the state courts or to resolve ambiguities in state law, their interpretive decisions of state law do not prevent the legislature’s clarification from applying retroactively. Furthermore, it is clear from the Final Bill Report that the 1989 amend
 
 *304
 
 ment was intended to clarify the statute and remove the ambiguity in the language. Thus, under
 
 Overton,
 
 the 1989 amendment applies retroactively even without an express provision for retroactivity.
 

 The trustee also argues that retroactive application of subsection (3) interferes with “vested property rights” and “vested contractual rights.” The trustee relies on
 
 In re Camelot Assoc. Ltd Partnership,
 
 102 B.R. 161 (Bankr.D.Minn.1989), in which the bankruptcy court refused to give retroactive effect to a Florida statute rendering assignments of rents absolute. The trustee's reliance is misplaced. First, the statutory change in
 
 In re Camelot
 
 was much broader than that in this case. In fact, it is most closely analogous with Washington’s
 
 1969
 
 amendments, which altered longstanding substantive property rights. Those amendments were held not to be retroactive in
 
 In re Federal Shopping Way, Inc.,
 
 457 F.2d 176, 180 (9th Cir.1972). The 1989 amendment, however, did not effect such a substantive change. Second, the
 
 In re Camelot
 
 decision responds to Florida law concerning retroactivity, which requires an “explicit statement” for retroactive application.
 
 In re Camelot,
 
 102 B.R. at 166. As noted above, Washington has a more liberal approach to retroactivity-
 

 Finally, the trustee avoids the obvious implications of retroactive clarifications in the absence of a decision of the state supreme court construing the statute. Where a clarification dates back to the original enactment the clarifying amendment operates as though it were originally included in the enactment. Here, subsection (3) merely clarifies what the respective rights of the contracting parties were all along. Thus, the trustee never had any “vested right” in the construction imposed by the bankruptcy courts prior to the clarifying amendment.
 

 C. Conclusion
 

 The Court finds that the 1989 amendment to Wash.Rev.Code 7.28.230 applies retroactively to clarify the legislature’s intent in 1969. Under Washington law, then, CrossLand perfected its security interest in the rents by recording the assignment of rents in 1987. CrossLand’s entitlement to the rents is therefore superi- or to the trustee’s, and Judge Yolinn properly ruled in CrossLand’s favor and lifted the automatic stay.
 

 The decision of Bankruptcy Court is therefore AFFIRMED.
 

 The Clerk of this Court is instructed to send copies of this Order to all counsel of record and to Bankruptcy Judge Sidney C. Yolinn.